# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:                                          Case No. 16-10168-DHW
                                                Chapter 7
JOHN C. TOMBERLIN
JAN M. TOMBERLIN,

        Debtors.
_____
WILLIAM C. CARN, III, TRUSTEE,

        Plaintiff,

v.                                              Adv. Proc. 16-01115

WALL & ASSOCIATES, INC.,

        Defendant.

## MEMORANDUM OPINION

Defendant, Wall & Associates, Inc., filed a motion seeking a transfer of venue for this adversary proceeding, or alternatively, to compel arbitration of the parties' dispute. William C. Carn, III, Plaintiff/Trustee, opposes the motion.   For the following reasons, Defendant's motion to compel arbitration in Fairfax County, Virginia will be granted.

### Procedural Background and Alleged Facts

Plaintiff/Trustee filed a three-count complaint.   Count 1 asserts a breach of contract claim.   In connection with this count, Plaintiff/Trustee contends that the debtors, John C. Tomberlin and Jan M. Tomberlin, accumulated significant tax liabilities to the Alabama Department of Revenue and to the Internal Revenue Service (hereinafter IRS).   The tax liability to the IRS alone was in excess of $500,000.00.

In July of 2015, Mr. Tomberlin received a solicitation from Defendant offering to provide services to minimize taxes, penalties, and interest owed to the Alabama Department of Revenue and to the IRS.   On August 5, 2015, the debtors executed an agreement with Defendant under which Defendant would provide services to minimize the debtors' tax liability for an initial fee of $50,000.00 plus an additional fee of $1,000.00 per month.   The agreement contains a provision which compels "[a]ny controversy, dispute, or claim arising out of, or under, or related to [the] Agreement [to] be finally settled in arbitration. ..."   In addition, the agreement fixes Fairfax, Virginia as the location of any arbitration, and contains a forum selection clause making the agreement subject to the laws of Virginia.

In late September 2015, the IRS issued Notices of Levy to various banks wherein the debtors maintained individual and business accounts. As a result, the debtors' bank accounts were frozen.

Plaintiff/Trustee asserts that Defendant did minimal work on the debtors' behalf. That work consisted of obtaining Powers of Attorney from the debtors in order for Defendant to negotiate on their behalf, sending correspondence to the IRS, and communicating with the debtors by e-mails and conference calls. Plaintiff/Trustee alleges that Defendant failed to take reasonable action to reach a settlement with the IRS.

Although the debtors paid the $1,000.00 monthly fee to Defendant for each of the months September and October, 2015, they did not pay the monthly fee for the month of November 2015. On November 5, 2015, Defendant notified the debtors that their account had been placed in a "stop work" status due to the failure to pay the November fee.

Plaintiff/Trustee contends that notwithstanding that Defendant had been paid $52,000.00 for its services to the debtors, Defendant stopped work under their contract and that the amount paid by the debtors to Defendant greatly exceeded the value of the services rendered. As such, Plaintiff/Trustee contends that Defendant breached the parties' contract.

In Count II of the complaint, Plaintiff/Trustee makes a claim under 11 U.S.C. § 548(a)(1)(B). Therein, Plaintiff/Trustee maintains that the transfer by the insolvent debtors to Defendant is due to be recovered as a fraudulent transfer in that the debtors received less than reasonably equivalent value for that transfer.

Count III of the complaint makes a claim under 11 U.S.C. § 542 seeking turnover of estate property. In essence, the turnover count alleges that the funds paid by the debtors to Defendant were not earned and should be returned as estate property.

Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1334(b) and § 157(a), and The United States District Court for this district's General Order of Reference of April 25, 1985.

Legal Conclusions

The law controlling the intersection of arbitration[1] and bankruptcy was addressed

---

[1]The Federal Arbitration Act (hereinafter FAA) provides:

A written provision in any maritime transaction or a contract evidencing a transaction

by the Eleventh Circuit in *The Whiting–Turner Contracting Co. v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.)*, 479 F.3d 791 (11th Cir. 2007). Therein, the Eleventh Circuit stated as follows:

> The [Federal Arbitration Act] establishes a federal policy favoring arbitration. However, "[l]ike any statutory directive the Arbitration Act's mandate may be overridden by a contrary congressional command." "Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate." The party opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of a judicial remedies [sic] for [the particular claim] at issue."

*Id.* at 795 (citations omitted). The Eleventh Circuit applied a three-factor test, as set forth by the United States Supreme Court in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), to determine whether Congress intended the Bankruptcy Code to preclude a waiver for judicial remedies. The test requires a court to examine "(1) the text of the statute; (2) its legislative history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." *In re Electric Machinery Enterprises, Inc.*, 479 F.3d at 796 (quoting *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002)); *McMahon*, 482 U.S. at 227.

Applying this three-part test, the court found "no evidence within the statute's text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code." *In re Electric Machinery Enterprises, Inc.*, 479 F.3d at 796. Thus, the first two parts of the test are settled leaving this court only with the task of applying the third part of the test, namely whether arbitration of the three counts of the complaint would inherently conflict with the underlying purposes of the bankruptcy statute.

At the outset, the court notes that the nature of the claim (core v. non-core) is in part determinative in deciding whether a claim must be submitted to arbitration. The existence of an inherent conflict between the FAA and the Bankruptcy Code hinges largely on whether the proceedings at issue are core or non-core. A core proceeding "involves a right created by the federal bankruptcy law" or is "one that would arise only in bankruptcy." *In*

---

> involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration of an existing controversy arising out of such a contract transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

*re Electric Machinery Enterprises, Inc.*, 479 F.3d at 797 (quoting *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir.1999)). The Eleventh Circuit found that:

> [i]n general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.

*In re Electric Machinery Enterprises, Inc.*, 479 F.3d at 796 (citations omitted).

Here, the complaint contains a mixture of core and non-core claims to which the third part of the test must be applied.

## Count I: Breach of Contract

The breach of contract claim is indisputably non-core and the parties do not contest the validity of the contract's arbitration clause. As noted above, "[i]n general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." *Id.* at 797. A breach of contract claim does not invoke a substantive right created by the federal bankruptcy law and could exist wholly outside of bankruptcy. Therefore, enforcing arbitration of this claim would not inherently conflict with the underlying purposes of the bankruptcy code.

## Count II: Fraudulent Transfer

Count II, the 11 U.S.C. § 548 fraudulent transfer avoidance claim, is a core proceeding.[2]

The fraudulent transfer claim at issue here is directly connected to the facts underlying the breach of contract claim. The court must keep in mind that "the label a party attaches to a claim does not require the court to wear blinders as to that claim's true substance." *In re Harrelson*, 537 B.R. 16, 24 (Bankr. M.D. Ala. 2015) (quoting *McCallan v. Hamm*, No. 2:11-CV-784-MEF, 2012 WL 1392960, at *5 (M.D. Ala. Apr. 23, 2012)). Here, it appears that the *true substance* of Trustee/Plaintiff's fraudulent transfer claim is essentially an extension of the breach of contract claim. Further, "[t]here can be little doubt that fraudulent conveyance actions by bankruptcy trustees—suits which, ... constitute no part of the proceedings in bankruptcy but concern controversies arising out of it—are

---

[2]   Actions to avoid fraudulent transfers are core proceedings under 28 U.S.C. 157(b)(2)(H).

quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56, 109 S. Ct. 2782, 2798, 106 L. Ed. 2d 26 (1989) (internal citations omitted). Because this claim is essentially one for breach of contract, enforcing arbitration as to this claim does not inherently conflict with the underlying purposes of the bankruptcy code.

## Count III: Turnover

Similar to Count II, Count III's claim for turnover is expressly listed as a core proceeding. *See* 28 U.S.C. 157(b)(2)(E). But again, that does not end the inquiry as to whether the claim should be precluded from arbitration. The court must decide whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. *See In re Elec. Mach. Enterprises, Inc.*, 479 F.3d at 796.

The turnover claim is, like the fraudulent transfer claim, also essentially a breach of contract claim. "Turnover proceedings are not to be used to liquidate disputed contract claims. Clearly, Congress envisioned the turnover provision of [11 U.S.C. § 542] to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir.1990) (citations omitted). "To apply turnover principles to [a] dispute between [a creditor] and [debtor] would allow [the debtor] to recover monies under the Bankruptcy Code from disputed claims based strictly on state law. Certainly such procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a debtor under the Bankruptcy Code." *Id*. (footnote and internal quotation marks omitted). Therefore, there is no inherent conflict that mandates preclusion of the FAA with regard to the turnover count.

In deciding this case, the undersigned does not suggest that compelling arbitration of core claims, specifically fraudulent transfer and turnover claims, can never inherently conflict with the underlying purposes of the bankruptcy code. However, of the three claims brought in this complaint, it is apparent that the non-core, breach of contract claim predominates. Where there is a mixture of core and non-core claims in one proceeding, the court should look to which issue predominates. *In re Huffman*, 486 B.R. 343, 357 (Bankr. S.D. Miss. 2013). Here, the predominate claim is the breach of contract claim.

Finally, the objectives of the bankruptcy code are not negatively impacted by compelling arbitration here. The determination of whether compelling the valid arbitration agreement would inherently conflict with the underlying purposes of the bankruptcy code requires a particularized inquiry into the nature of the claim and the facts

and specific bankruptcy." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2nd Cir. 2006). "The objectives of the Bankruptcy Code relevant to this inquiry include 'the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.'" *Id*. (quoting *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*), 118 F.3d 1056, 1069 (5th Cir.1997)); *see also In re Harrelson*, 537 B.R. at 26. Neither the fraudulent transfer nor the turnover claim involves an order of this court. Because the claims all rely on the same agreement and the two core claims are essentially extensions of the non-core breach of contract claim, compelling arbitration here would best achieve a centralized resolution and prevent piecemeal litigation. *See In re Harrelson*, 537 B.R. at 28 (holding that plaintiff's turnover and fraudulent transfer claims were referable to arbitration, while her claims for violations of debt relief agency restrictions was not); *In re Cardali*, No. 10-11185 SHL, 2010 WL 4791801 (Bankr. S.D.N.Y. Nov. 18, 2010)(granting motion to compel arbitration of fraudulent transfer claim that was nearly identical to an arbitrable non-core claim).

## Conclusion

For the foregoing reasons, the Defendant's motion to compel arbitration by enforcing that provision of the parties' contract will be granted, and this adversary proceeding will be stayed pending completion of that arbitration. A separate order will enter accordingly.

Done this the 30th day of January, 2017.


Dwight H. Williams, Jr.
United States Bankruptcy Judge


c: Debtors
Collier H. Espy, Jr., Attorney for Plaintiff/Trustee
Stephen B. Porterfield, Attorney for Defendant